Chief Justice Robertson
did not sit in this case. — Judge Underwood delivered the Opinion of the Court.
This cause was heretofore in this court. A report of the case may be found in 3 J. J. Marshall, 195. We refer to it for a statement of the case, and for the principles settled. It is proper to remark, that the word not has been interpolated, by the reporter or printer, in the 17th line of page 197, whereby, as it reads, the court is made to assert a proposition which is at war with the long settled principles of the law. The manuscript opinion does not contain the word thus improperly inserted.
Upon the return of the cause to the circuit court, Letcher filed three pleas ; to two of which the bank filed demurrers, which were sustained. We differ as to the validity of the pleas demurred to. I think they constitute no defence to the action. Judge Nicholas is of a different opinion. The consequence is, that the judgment' of the circuit court, sustaining the demurrers, is affirmed.
A trial took place upon the issue joined on a plea of payment.
Factsofthecase pearedin.pvoof.
It seems from the proof, that the note sued on was discounted at bank, and the amount thereof, less by the discount, paid to Wilson — the Letchers being his sureties only. After the note became due, another note, signed by the same obligors, and for the same amount, was presented by the principal obligor to the bank, for discount, and was accordingly discounted. The amount of this last note was not paid over to Wilson; but, according to the usage of the bank upon discounting notes for the purpose of renewal, a credit was entered on the books of the bank, in favor of Wilson, for the amount of the note sued on. The witness stated, that it was the custom of the bank, when notes were renewed, to deliver up the old note, if applied for ; but whether the note sued on was then applied for, and delivered up to Wilson, he could not say. It moreover appeared, that a third note, purporting to be signed by the same obligors, had been presented by Wilson, for discount, and was ac-coro'ingly discounted by the bank. When this third note was discounted, Wilson owed the bank two debts— one being the note discounted, which renewed the note sued ori. The object in presenting the third note, was to consolidate both debts in a new note. After the third note was discounted, no money was paid to Wilson ; but the proceeds of the third note, less by the discount, were credited, according to the custom of the bank, against the notes previously given by Wilson &c., and which were renewed by the discount of the said third note. It seems that this third note was afterwards put in suit by the bank, and the Letchers were exonerated from its payment, upon the ¡ilea of non est factum.
Upon this evidence, the court instructed the jury to find for the plaintiffs — allowing certain credits. The propriety of this instruction is the only remaining question.
If the proceeds of the second note, discounted to renew the note sued on, should be applied as a payment, then the note sued on has been fully satisfied, and the instruction of the court was erroneous. But if the proceeds of the second note, and which were entered as a credit to Wilson &c., in order to balance their liability *84 for the note sued on, ought to be entirely disregarded, then the instruction of the court was correct.
A 'party who is induced, by fraud or imposition, to enter a credit for a payment -- as, for the amount of a note which turns out to be forged,in whole or in part — may disregard the transaction, and cancel the credit.
A note given, for a debt secured by a previous . similar note',which had become due, is no satisfaction ofthedebt. But if the parties-to the ne v note are different, it may be pleaded-as an accord and satisfaction. Where a Bank discounts anote for the purpose of renewing a former loan, in the usualway, the negoeiation seems to be equivalent to a new loan, and an independent payment of the old_ debt — not merely giving one note as satisfaction of another. ^
We leave out of view the third note, because the Letch-ers avoided its payment by the plea of non est factum, and we are not disposed to have a just debt paid by a note in part or altogether forged.. When-the third note was dis-. counted, the president and directors- of the bank, no doubt, 'believed it to be genuine, if they were induced to give a credit by fraud or imposition, we think it competent for them to cancel that credit, and refuse to abide by it, upon the discovery of the fraud or imposition. It was certainly an imposition upon the bank, on the part .of Wilson, to offer, as genuine, a spurious note.
Nothing, however, in the present record will authorize us to denounce the second note’in any respect. We, therefore, feel ourselves bound to regard it as a genuine note, discounted in good.faith, for the purpose of renewing the note sued on. -Ih like manner we regard the credit given, in'order to balance the first note, or the note sued on, as fairly made, and not superinduced. by fraud. At least, we think the jury,, from the evidence, were-so authorized to regard' it. The effect of the credit so given is to be considered. Was it an extinguishment or payment of the first note ? We think it was, and that it can be so regarded without at all militating against, the doctrine; that one note cannot be pleaded by way of accord and satisfaction for another, due at the time the second is executed, when the parties to both are thé same. When the parties are /not the same, one note may be pleaded as accord and satisfaction of another. Hanson vs. Cowan, 7 Monroe, 574. In the case of Harlan vs. Wingate's Adm'r, 2 J. J. Marshall, 38, it was said, “ notes may be a good payment if they are accepted as such.” In that case, Harlan paid off a note'due Win-gate, by executing his note to Warren. In the case of Castleman vs. Holmes, 4 J. J. Marshall, 3, it was said, “ when a debt is continued by renewing notes, each renewal is to be.regarded as anew contract. The old contract is then settled, and the old note is then generally cancelled. These transactions, of renewing debts by new notes, are equivalent to paying the existing *85 debt, and again borrowing the money. The old debt is paid off by the new.” ''
A question whether a note was given for a loan, or merely as a payment of a similar note already cine — is one of fact, to be decided by a jury-
Now, according to the ordinary course of business in bank, as proven by the testimony in this case, there is a record kept of the renewal and continuation of debts by new notes. When the new note is discounted, the money, which the drawer ot the note is entitled to in consequence of the discount of his note, instead of being paid over to him, is applied, by an entry on the books of the bank, in payment or discharge of the oid note. This is substantially the same thing as if an entry was made on the back or face of the old note, “ satisfied by payment in full.” And t'he whole transaction is equivalent to drawing the money resulting from the discount of the new note, and then paying it back in discharge of the old note. When a credit is thus fairly entered by the bank, and no improper practice has been resorted to in order to procure it, we see no reason why it should not be enforced as a payment. The new notes executed, to the bank, are not notes for the original debt; but they are independent notes, offered for sale in order to raise funds to pay off the old debts. The contracts are essentially distinct. If, therefore, the bank has taken, in succession, a dozen notes, they are not to be considered asa dozen notes given for the same debt, but as so many7 distinct notes, each founded upon a separate consideration, to wit : a new loan on the part of the bank to the drawer. It is, therefore, not like giving a dozen notes, for the same consideration, to the same person. We are consequently of the opinion, that if the new contract, made with flic bank, by the discount of the second note, was not affected byr fraud or deceit; if it was obligatory upon tiie parties, being fair, and the credit in discharge of the note sued on, being consequently7 fairly7 obtained, the old note has been paid off. ■ These things should have been left to the jury. The instruction of the court was positive, and allowed the jury no discretion.
• The judgment must, therefore, be reversed with costs, and the cause remanded for a new trial, to be conducted in conformity to this opinion.