## Ethel M. Rayborn, Executrix, Appellee, v. Grand Lodge of State of Illinois of Independent Order of Odd Fellows et al., Appellants.

### Gen. No. 7,723.

1. Trusts—*when trust results to wife supplying purchase price.* Where a wife upon the division of her father's estate came into possession and ownership of notes evidencing loans, made by her father to her husband, of money which was used in the purchase of real estate, no trust of any kind was raised in the lands, either when the loan was made or when the notes became the property of the wife.

2. Appeal and error—*questions for review on objection by defaulted party.* While one in default cannot require testimony to be taken, nor insist upon a bill of exceptions, nor base error upon the insufficiency of the proof, he may, when proofs are submitted and made a part of the record, assign error upon the record on the ground that the proofs submitted negative or contradict complainant's right to relief.

3. Estates of decedents—*appeals from decree for sale of land as single proceeding.* Where an administratrix filed a petition to sell lands to pay debts and a devisee entered its appearance and filed demurrers thereto and at the same time presented objections to a claim which had been allowed and which apparently was the debt for the payment of which it was sought to sell the land, and the claimant joined issues as to the allowance of her claim and the motion of the devisee to set it aside and the entire record in both proceedings is before the Appellate Court and both appellant and appellee urge their contentions from the whole record without objection, it must be considered on appeal from the county court as a single proceeding in which the claimant enters her appearance in a special manner and consents to a final adjudication of her claim.

4. ESTATES OF DECEDENTS—*scope of review on appeal from order to sell land.* On petition by an administrator to sell real estate to which a devisee demurred and also presented objections to a claim which had been allowed against the estate, to both of which matters the claimant after appearing specially joined issue, the will of deceased and the inventory of the executor were before the lower court and this court on appeal and it is to be determined whether the decree, in ordering the sale of the real estate in question, was erroneous.

5. ESTATES OF DECEDENTS—*recourse to residuary lands to pay debts before specific devises.* Where a testator made a specific devise of a certain farm and there were other lands which would pass under the residuary clause of the will, it was error to decree a sale of such farm for the payment of debts before the lands passing under the residuary clause had been resorted to and exhausted.

6. HARMLESS ERROR—*admission of incompetent evidence of facts otherwise proved.* The admission of the testimony of the widow in a proceeding involving a claim filed by her against the estate, in which certain devisees were defendants, though erroneous under section 2 of the Evidence Act, Cahill's Ill. St. ch. 51, ¶ 2, did not constitute reversible error where the admissible testimony of others was sufficient to establish the validity of claimant's demand.

7. WITNESSES—*competency of declarations against interest by representative of decedent.* Section 2 of the Evidence Act, Cahill's Ill. St. ch. 51, ¶ 2, would not render incompetent the testimony of the residuary legatee, who was acting as executrix, against her own interest in a proceeding involving the right to sell real estate and the validity of a claim allowed against the estate in which devisees of the land sought to be sold were the parties defendant.

Appeal by defendants from the County Court of Morgan county; the Hon. H. P. SAMUELL, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded with directions. Opinion filed June 17, 1924.

JOHN J. REEVE, for appellants.

JONAS & BRANSON and BELLATTI, BELLATTI & MORIARITY, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from a decree of the Morgan

county court for the sale of certain lands to pay debts, in the estate of Henry S. Rayborn, deceased. Henry S. Rayborn died testate in said county on the 24th day of April, A. D. 1923, leaving a last will and testament, the provisions of which were substantially as follows: In the first clause of the will, testator directs the payment of all of his just debts, by his executrix, as soon as conveniently may be done after his decease. By the second clause, testator devises and bequeaths a life estate to his widow, Ida E. Rayborn, in and to all of his property, real, personal or mixed, of whatsoever description and wherever situated, the income and proceeds thereof to be used and enjoyed by her during the term of her natural life. By the third clause of the will the testator devises a farm of 208½ acres of land to The Farmers State Bank and Trust Company of Jacksonville, Illinois, in trust, subject to the life estate of the widow, Ida E. Rayborn, to rent, manage and control the said farm, collect the rents therefrom and after deducting the charges and expenses of said trust to pay the net income thereof annually or semiannually, if circumstances will permit, to his daughter and only child, Ethel May Rayborn, for and during her natural life. There are some further provisions attached to this trust, that the said income shall be paid to his daughter personally and not upon the order or direction of his daughter or any husband she may marry, nor to any other person, and the testator expressly directs that said trust estate shall in no event be subject to any judgment, execution, conveyance or transfer, nor be incumbered in any manner, nor be liable to alienation on account of any debt or obligation of his said daughter. One hundred sixty acres of said lands had been conveyed to the testator by a deed from William L. Kennedy and wife, dated February 20, 1891, and will be called the "Kennedy Farm" in this opinion. The 48½

acres were purchased at a later date and became a part of the farm.

The testator further provided in the third clause of the will. that after the death of his daughter, Ethel May Rayborn, said trustee, or the successor in trust, should sell the lands and divide the proceeds equally between the children of said Ethel May Rayborn, and any child or children of a deceased child should take equally its parent's share.

The clause further provides that in case his said daughter shall leave no descendant or descendants her surviving, the proceeds from the sale of said lands shall be divided into two equal parts, and that said trustee shall pay one-half thereof to the Odd Fellows' Orphan Home for Children at Lincoln, Illinois, and the other one-half to the Odd Fellows' Home for the Aged at Mattoon, Illinois, as a permanent endowment fund for each of said institutions, such bequests to be called and so designated on the book of said institutions, respectively, the "Henry S. and Ida E. Rayborn Fund."

By the fourth clause of the will the said daughter, Ethel May Rayborn, subject to the life estate to the widow, was made the residuary legatee and devisee of testator's estate, and by the will the widow, Ida E. Rayborn, was nominated as executrix, without bonds, and in case of her death, declination or inability to act, the daughter, Ethel May Rayborn, was named executrix with the like request that she be not required to give any bond.

Testator died, leaving him surviving his said widow and daughter, Ethel May Rayborn, a single lady about thirty-five years of age, and no other heirs. The will was duly proved and on July 21, 1923, Ethel M. Rayborn duly qualified as executrix of the said will and letters testamentary were issued to her.

On the first day of October, A. D. 1923, the executrix filed an inventory in said estate, showing personalty

to the amount of $518 and listing and inventorying the said "Kennedy Farm" of 208½ acres, valued at $20,850, and inventorying three other tracts of real estate, namely: a lot in the City of Jacksonville valued at $3,500; a piece of land in the City of Jacksonville valued at $5,000, and 138½ acres of land in Greene county, Illinois, valued at $5,540, making a total value of estate, as inventoried, of $14,558 in addition to the "Kennedy Farm" lands. There was an allowance made to the widow, amounting to $1,500, about which no question is raised in these proceedings. The executrix paid various items of debts, claims and demands against the estate, amounting to the sum of $1,342.58, and filed her claim for the amount, which was allowed by the court November 6, 1923, and there is no contention over this claim.

On the same day the widow, Ida E. Rayborn, filed a claim against the estate, amounting to $17,392.45, and this claim was approved by the executrix and with her consent allowed on the 6th day of November, A. D. 1923. Both claims were allowed as of the sixth class.

On the 21st day of November, 1923, appellee, as executrix, filed her petition in the county court of Morgan county to sell real estate belonging to said estate to pay the debts of the estate. The petition recites the proceedings had in said estate and the issuing of letters testamentary to appellee, the allowance of said claims, the appraisement bill and the making of a full report to the court as to the condition of said estate. The petition sets out and describes the "Kennedy Farm" lands, as owned by the testator at the time of his death, and prays for the sale of said lands and mentions no other lands. The petition sets out the deficiency of personal assets to pay said debts. The petition recites the letters testamentary, the inventory, the appraisement bill and the just and true account of the personal estate and debts, and refers to them and the record of them and enlarges the allega-

tions of the petition, as said instruments "will more fully appear."

On the 27th day of November, 1923, appellants filed two instruments in said cause, entering their appearance: one a general and special demurrer to the petition, demurring specially on the ground that appellee had not made any just and true account of the personal estate and debts of said decedent to the county court and had made no such report and none is found in the record. At the same time appellants presented to the court objections to the claim allowed in favor of Ida E. Rayborn in the sum of $17,392.45, and various grounds of objection were stated in writing. It was objected that the claim was without merit and that "the basis for the allowance was for the purpose of selling certain real estate of which testator died seized."

Appellants further objected that by division C of the third clause of the will said lands were devised in trust, and that the purpose of the allowance of the claim and the proceedings to sell real estate to pay debts was for the sole and only purpose of devesting appellants of and from the benefits of said will. A motion was made by appellants to set aside the said claim of Ida E. Rayborn. This motion was set for hearing on December 3, 1923, and all parties being present Ida E. Rayborn, the claimant, joined issue on the motion and consented to submit said cause to the court for hearing on the 29th day of December, A. D. 1923. The cause was adjourned to December 31 when the hearing was had. The hearing was preceded by a stipulation stated by the court:

"It is the intention of the claimants, as well as the Executrix, to prove not only the claim which has heretofore been allowed; but, also, to prove that a large portion of the moneys which make up this claim were moneys that were used for the purpose of paying for the land which is sought to be sold herein on a peti-

tion to sell real estate to pay debts; that is to say, the 208 acres.''

On this hearing the testimony of witnesses was taken and the records of the court in this estate, the will, inventory and other records, were submitted. The court sustained the claim of Ida E. Rayborn and refused to set it aside. At the same time and as a part of the same hearing, the court passed upon the demurrer of appellants to the petition of the executrix and overruled said demurrer, and thereupon ordered appellants to answer the petition instanter, which appellants failing to do, but standing by their demurrer, they were adjudged to be in default and a decree of sale was entered as prayed in the petition.

That the hearing was had upon the claim of Ida E. Rayborn, and the petition, as a consolidated single cause, is indicated by the language of the decree, which recites that, ''this cause having been brought on to be heard upon the petition herein taken as confessed, and the exhibits, records of this court and proofs and the testimony of William C. Beilschmidt, Henry W. Beilschmidt, Ida E. Rayborn and Ethel May Rayborn, witnesses,'' etc. At least, it is evident from the recitals of the decree that the court did not grant the decree upon the default of appellants but heard proofs upon the petition, and that the records of the court, the will and inventory, both of which were offered in evidence, were before the court, in passing upon the merits of the petition.

The court further found by the decree that the testator, Henry S. Rayborn, deceased, purchased the said lands described in the petition in 1891 with moneys loaned to him by his father-in-law, William C. Beilschmidt, he being the father of said Ida E. Rayborn; that to evidence said loan the said Henry S. Rayborn executed and delivered to the said Beilschmidt his two promissory notes, one for the sum of $7,775, and the other for the sum of $5,000; that said

William C. Beilschmidt departed this life on July 29, 1913, leaving said two notes among his assets and that afterwards, about the first day of March, A. D. 1921, the assets of the said estate of William C. Beilschmidt, deceased, were by agreement divided between his three children, Ida E. Rayborn, William C. Beilschmidt and Henry W. Beilschmidt, and that in said division the said two notes came into the possession of and became the property of the said Ida E. Rayborn, and that she received in addition from her said father's estate the sum of $2,908.93 in money which she afterwards loaned to her husband, Henry S. Rayborn, in his lifetime; that the said notes were afterwards taken by the said Henry S. Rayborn and destroyed by him; that the interest on said notes had been paid by the said Henry S. Rayborn up to the first day of March, A. D. 1921.

We have gone into this record exhaustively as many questions of substantive law and practice are raised upon it.

It is contended by appellee that the proofs offered establish a resulting trust in this land in favor of the claimant, Ida E. Rayborn; that where a husband takes title to land bought with his wife's money, there is no presumption of an advancement to him, but it creates a resulting trust, quoting *Wright v. Wright*, 242 Ill. 74, and *Crawford v. Hurst*, 307 Ill. 243. Both cases cited were brought in a court of chancery to establish a resulting trust and arose by the husband taking title to land, using his wife's money in its purchase. In this case the moneys were obtained as a loan from a third party nearly thirty years before the claimant wife had any title or claim to the securities, and it is difficult to see how the mere shifting of ownership in notes can create a resulting trust. No resulting trust can arise, except it arises out of the original transaction. *Reed v. Reed*, 135 Ill. 487; *Furber v. Page*, 143

Ill. 630. It is certain that when William C. Beilschmidt loaned the moneys represented by the two notes to Henry S. Rayborn, and the moneys were used by Rayborn to pay upon his lands or take up prior loans, no trust of any kind was raised in the lands in favor of William C. Beilschmidt, and it follows that no trust can thereafter arise, merely because the daughter becomes, by assignment or otherwise, the owner of the notes. It is true that equity is based upon moral rights and natural justice, as contended by appellee citing *Jennings v. Kotz,* 299 Ill. 465, and in courts of equity, where the jurisdiction is original and the domain practically the whole field of human affairs, such principles guide the court, but it does not follow that such principles can always be the guide of county courts, under the statutory jurisdiction to sell lands of decedents to pay debts.

It is contended by appellee that the appellants, having elected to stand by their demurrer, the only issue in this case is the sufficiency of appellee's petition, citing *Dunne v. County of Rock Island,* 273 Ill. 53. It is the rule in equity that it is the office of a demurrer to test the sufficiency of a bill upon its face. This raises the most serious question in this case. If there were nothing before the court but the petition, in form, and the demurrer, doubtless appellee's contention would be sound.

Section 101 of chapter 3 [Cahill's Ill. St. ch. 3, ¶ 102] provides: "Such application shall be docketed as other causes, and the petition may be amended, heard or continued for notice or other cause, and the practice in such cases shall be the same as in cases in chancery." This section has been fully construed in *Therens v. Therens,* 267 Ill. 598.

Section 18 of chapter 22 [Cahill's Ill. St. ch. 22, ¶ 18] provides: "Where a bill is taken for confessed, the court, before a final decree is made, if deemed requisite, may require the complainant to produce

documents and witnesses to prove the allegations of his bill, or may examine him on oath or affirmation touching the facts therein alleged. Such decree shall be made in either case as the court shall consider equitable and proper.'' Under the construction in *Therens v. Therens, supra,* this section of the Chancery Act applies to applications for the sale of real estate under the Administration Act.

In the case at bar, the court heard the testimony of witnesses and examined documents, records and exhibits of the estate and the will of Henry S. Rayborn, deceased, and the inventory were before the court, as appear in the certificate of evidence and as recited in the decree, and the question is, what advantage appellants can take upon this entire record as passed upon by the lower court. One in default cannot require testimony to be taken, nor insist upon a bill of exceptions, nor base error upon the insufficiency of the proof; but when proofs are submitted and made a part of the record a party in default may assign error, upon the record, that the proofs submitted negative or contradict complainant's right to relief. *Brahm v. Dietsch,* 15 Ill. App. 335; 21 Corpus Juris, 800, note 95; *Moore v. Titman,* 33 Ill. 367; *Bruner v. Battell,* 83 Ill. 322; *Bauerle v. Long,* 165 Ill. 340.

The substance of these authorities is as stated in 21 Corpus Juris, 800, *supra.*

''If evidence is actually taken by plaintiff and appears of record, and it destroys the case made by the bill, a decree for plaintiff will be reversed on appeal,'' quoting *Atkins v. Faulkner,* 11 Iowa 326, and *Cook v. Woodbury County,* 13 Iowa 21.

In *Bauerle v. Long, supra,* on page 346, it was held that a defendant, defaulted, could appear before the master and cross-examine the witnesses, and in *Moore v. Titman, supra,* it was held that a defendant, defaulted, upon the master's making the report of his

computation, the defendant may, if he chooses, file exceptions and resist its approval.

How useless this would be if the court, in the end, is to follow the terms of the bill or petition, regardless of such procedure. It is objected by appellee that appellants, in their special grounds for demurrer, did not raise the objection as to selling the particular lands described in the petition, but only made such objection in their motion to set aside the allowance of claim made to Ida E. Rayborn. Doubtless the general demurrer would raise this question, but it leads to a consideration of this entire proceeding. If appellants' demurrer to the petition admits all facts set out in the petition and well pleaded to be true, and appellee is entitled to a decree upon that record standing alone, then it is pertinent to inquire the occasion for taking testimony in this case, the bill of exceptions and appellee's contention of a resulting trust, based upon such testimony.

We conclude that the petition to sell lands and the motion to set aside the allowance made to Ida E. Rayborn are parts of one and the same proceeding. The allowance of a claim in the probate court against the administrator is only prima facie evidence of the validity of such claim against the heir (*Atherton v. Hughes*, 249 Ill. 326; *Noe v. Moutray*, 170 Ill. 174; *Askins v. Hott*, 188 Ill. App. 240) while an application to sell real estate to pay debts can only be sustained when it appears that there are existing debts. *Atherton v. Hughes, supra*, p. 327.

The heir or devisee may on such application require proof of the claims. It has been held that on the application to sell real estate to pay debts, the creditor is not a party to the proceeding and is not bound by the defense that is set up by the heir or devisee. *Stone v. Wood*, 16 Ill. 180. Also, it has been held that in the proceedings before the probate court, by the creditor against the administrator, the heir is not a

party and it is further held that the heir holds title to lands subject to the necessities of the administration, "but it cannot be said, that being so, there is, necessarily, privity between him and the administrator—there is none in blood, none in deed, none in law, none in estate." *Hopkins v. McCann*, 19 Ill. 115, 116.

The lands may be subjected to sale for the payment of debts, in a proper case, through the probate court, and the heir or devisee is entitled to have the debts established before his lands are taken. Just how the proceeding is to be undertaken, to finally adjudicate the rights of the creditors and the heir, has not been specifically pointed out by the statute. In the case at bar the administrator filed a petition to sell lands and the devisee filed a motion to set aside the prima facie allowance to Ida E. Rayborn. The court heard the petition and motion at the same time. Proofs were taken and exhibits presented, which the court considered in passing upon the motion and further considered in entering a decree upon the petition. The claimant, as to the order allowing claim, and the motion of the devisee to set aside, entered her appearance and "joined issues," in some proceeding to which she had not, hitherto, been a party. The stipulation read into the record by the court is enlightening, and shows that the whole matter was a part of the proceeding, based upon the petition of the executor to sell the 208 acres of land to pay debts. The petition to sell lands was the only proceeding that had drawn appellants into court, and appellants could have had no motive in moving to set aside the allowance made to Ida E. Rayborn, except it formed a part of appellants' defense to the petition to sell lands and Ida E. Rayborn, the claimant, could have had no motive in entering her appearance in said cause and "joining issue" with the appellants, other than to secure the payment of her allowance out of the real estate in question.

The entire record in both proceedings is before this court, and appellants and appellee urge their contentions from the whole record without objection. It must be construed as a single proceeding, an application, under the statute, to sell real estate to pay debts, in which the claimant, Ida E. Rayborn, enters her appearance and in a special manner, by motion, consents to a final adjudication of her claim.

Under section 10 of chapter 3 [Cahill's Ill. St. ch. 3, ¶ 10] a copy of the will is required in all cases to be attached to the letters testamentary, and there are authorities holding that in proceedings of this nature the will should be set out or the petition should negative a power of sale in the will. 24 Corpus Juris 583. But under our statute the same has not been required. *Moffitt v. Moffitt,* 69 Ill. 641.

In another line of cases it has been held that the probate court has no inherent authority to order a sale of decedent's real estate, but such authority is a special and limited one derived from statutes which designate the special cases for its exercise and the provisions of which must be strictly complied with throughout the entire proceeding, and this being the rule, the record is always before the court on jurisdictional matters. *Bennett v. Whitman,* 22 Ill. 454; *Unknown Heirs of Langworthy v. Baker,* 23 Ill. 484; *Fitzgerald v. Glancy,* 49 Ill. 465; *Therens v. Therens,* 267 Ill. 595; *Bocock v. Leet,* 210 Ill. App. 411, and *Commissioners of Fountain Head Drain. Dist. v. Wright,* 228 Ill. 211.

In *Bocock v. Leet, supra,* the court went very fully into the merits of a similar case and held that generally whatever proceedings, facts or papers the law or the practice of the various courts require to be enrolled are properly a part of the judicial record (quoting *Commissioners of Fountain Head Drain. Dist. v. Wright, supra*). It was further held that a

claim filed in the matter of the administration of an estate is a pleading and the court held: ''The proceeding to sell real estate to pay debts is purely of statutory origin, and where it is sought to devest an heir of his title to real estate in such proceedings, it must appear that the statute has been strictly complied with.''

In either or any construction given to this proceeding, the will of Henry S. Rayborn, deceased, and the inventory of the executor were before the court below and are before this court, and it is to be determined whether the decree, in ordering the sale of the ''Kennedy Farm'' constituted error.

Under the fourth clause of the will the executrix, Ethel May Rayborn, subject to the life estate to her mother, became the residuary legatee and devisee of the entire estate, subject to the trust estate devised to appellant, The Farmers State Bank and Trust Company of Jacksonville. It is not contended but that this trust estate, devised by clause three of the will, constituted a specific devise, and that there were other lands owned by the testator at his decease which would pass in the residuary clause of the will.

The general rule has always been that a specific legacy is a gift of a specific part of a testator's estate, identified and distinguished from all things of the same kind, and can only be satisfied by the delivery of the particular thing, and that if the estate, for any reason, should turn out to be less than the testator anticipated, or if for any reason there is required an abatement as to any of the legacies, general legacies, or residuary funds must first be abated before any abatement of the specific legacies could be required. *Rexford v. Bacon,* 195 Ill. 81; *Dauel v. Arnold,* 201 Ill. 579; *Lewis v. Sedgwick,* 223 Ill. 213; *Kincaid v. Moore,* 233 Ill. 591; *Pace v. Pace,* 271 Ill. 120; *Mears v. Strale,* 228 Ill. App. 519.

This principle of law has been so universally recog-

nized and of such elementary application that its mere suggestion indicates that it is applicable in this case. With this record before the lower court, even though appellants were in default, it was error to decree the sale of the "Kennedy Farm" lands before the lands passing under the residuary clause of the will had been resorted to for the payment of debts and exhausted.

No questions are raised on this appeal either as to the right of the widow to take under the will, and at the same time subject the major portion of the estate to the payment of her claim, or as to the jurisdiction of this court to pass upon this record.

Error is assigned upon the sufficiency of the proof to establish the claim of Ida E. Rayborn. The testimony of Ida E. Rayborn was objected to on the ground that she was an incompetent witness, the appellants defending said action as devisees under the will of Henry S. Rayborn, deceased. The claimant was an incompetent witness under section 2 of the Evidence Act [Cahill's Ill. St. ch. 51, ¶ 2] and her testimony should have been excluded. However, the testimony of William and Henry Beilschmidt and Ethel M. Rayborn, remaining in the record and being uncontradicted, was sufficient to establish the validity of claimant's demand.

Error is assigned as to the competency of Ethel M. Rayborn as a witness, she being an heir and executrix of her father's estate, and appellants cite *Kelsey v. Snyder,* 118 Ill. 550, to support this assignment. In *Kelsey v. Snyder,* the court had under consideration the testimony of the complainant in a bill filed against the administrator and heirs at law of Iva F. Benson, deceased, and it was held she was not a competent witness to testify to conversations and transactions with the deceased, prior to his death, and this case would only apply to the claimant, Ida E. Rayborn. No other authority is cited. Section 2 of the Evidence Act

[Cahill's Ill. St. ch. 51, ¶ 2], as this court understands the rule, would render incompetent the testimony of the claimant, Ida E. Rayborn, but would not render incompetent the testimony of Ethel M. Rayborn, the residuary legatee, testifying against her own interest; unless this court should construe the fourth ground of the motion, made by appellants, to set aside the allowance of the claim to Ida E. Rayborn, charging that, "the purpose of the allowance of said claim and the proceedings to sell said real estate to pay debts is for the sole and only purpose of divesting the said residuary legatees of and from the benefits of said will," as a charge of conspiracy and fraud on the part of Ida E. Rayborn and Ethel M. Rayborn, to defeat the trust, in which case, in the view of this court, the rights of all parties could be more amply protected in another forum.

The competent testimony in the record sustains the justice of the allowance made to Ida E. Rayborn. The decree shows the deficiency of the personal property to pay the debts established against the estate. This deficiency should be made first from the real estate passing by the residuary clause of the will and the "Kennedy Farm" lands should be resorted to for such payment, only in case the other lands belonging to the estate are insufficient to pay the debts.

For the error of the county court of Morgan county in decreeing the sale of the "Kennedy Farm" lands to pay such deficiency, the decree of that court is reversed and the cause remanded to the county court of Morgan county for further proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*